In re Richard MOORE.

In re Bobby Brooks.

In re Pigs to Hogs, Inc.

In re Gone Hog Wild.

In re Pig Palace, Inc.

In re James Blissard.

In re Jerry Milner.

Jim Norman, et al, Plaintiffs,

v.

Prestage Farms, Inc., et al, Defendants.

Bankruptcy Nos. 02–16606, 02–16607, 02–16836, 02–17171, 02–17184, 02–17267, 02–17269.
Adversary No. 03–1100.

United States Bankruptcy Court, N.D. Mississippi.

Feb. 27, 2004.

Danny E. Cupit, Jackson, MS, William Liston, Jr., Winona, MS, for Plaintiffs.

William F. Blair, Troy Farrell Odom, Blair & Bondurant, PA, Eileen Shaffer, Jackson, MS, Robert J. Dambrino, III, Grenada, MS, James H. Herring, Herring, Long & Crews, PC, Canton, MS, Craig M. Geno, Jeffrey K. Tyree, Harris, Geno & Dunbar, PA, Jackson, MS, for Defendants.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court are motions for summary judgment filed by Prestage Farms, Inc., (Prestage Farms), and each of the seven debtor entities (debtor/defendants) in the above adversary proceeding; a response thereto having been filed by Jim Norman, et al, (plaintiffs); and the court, having considered same, hereby finds as follows, to-wit:

## I.

### Jurisdiction

Since the Chapter 12 debtors are presently named defendants in the above captioned adversary proceeding, this court has jurisdiction of the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157, as well as, the General Order of Reference entered by the United States District Court for the Northern District of Mississippi on July 27, 1984.

The aspects of this cause of action which directly affect the Chapter 12 debtor/defendants would be considered collectively a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (B), and (O). Because of the direct impact upon the debtor/defendants, the aspects of this cause of action which seek relief against Prestage Farms would be considered collectively a "non-core" or "related" proceeding as contemplated by 28 U.S.C. § 157(c).

## II.

### Factual Background

This adversary proceeding was originally filed in the Chancery Court of Montgomery County, Mississippi, on January 4, 2000, by 68 plaintiffs seeking injunctive relief, as well as, substantial compensatory and punitive damages because of alleged noxious and offensive emissions resulting from the debtor/defendants' operation of separate hog farms pursuant to contractual agreements with their co-defendant, Prestage Farms. Prestage Farms and the seven debtor/defendants have filed identical motions for summary judgment wherein they allege that the cause of action asserted by the plaintiffs is barred by the one year statute of limitations found in Miss.Code Ann., § 95–3–29 (1972), which is set forth in pertinent part as follows:

**§ 95–3–29 Immunity of Certain Agricultural Operations From Nuisance Actions.**

(1) In any nuisance action, public or private, against an agricultural operation, including forestry activity, proof that said agricultural operation, including forestry activity, has existed for one (1) year or more is an absolute defense to such action, if the conditions or circumstances alleged to constitute a nuisance have existed substantially unchanged since the established date of operation.

(2) The following words and phrases as used in this section shall have the meanings given them in this section:

(a) "Agricultural operation" includes, without limitation, any facility for the production and processing of crops, livestock, farm-raised fish and fish

products, livestock products, wood, timber or forest products, and poultry or poultry products for commercial or industrial purposes.

(b) "Established date of operation" means the date on which the agricultural operation, including forestry activity, commenced operation. If the physical facilities of the agricultural operation, including forestry activity, are subsequently expanded, the established date of operation for each expansion is deemed to be a separate and independent "established date of operation" established as of the date of commencement of the expanded operation and the commencement of expanded operation shall not divest the agricultural operation of a previously established date of operation.

. . . .

(3) The provisions of this section shall not be construed to affect any provision of the "Mississippi Air and Water Pollution Control Law."

. . . .

Each of the motions for summary judgment asserts that the respective farms were fully operational for more than one year before the Montgomery County Chancery Court action was filed. Accordingly, the movants contend that § 95–3–29(1) serves as an absolute defense to the plaintiffs' nuisance cause of action.

In response, the plaintiffs allege that the one year bar of § 95–3–29(1) does not apply because the farming operations have not remained "substantially unchanged" since their respective established dates of operation. The plaintiffs assert that on seven of the ten farms (several of the farms are operated directly by Prestage

Farms), incinerators to dispose of animal carcasses, which require permits from the Mississippi Department of Environmental Quality, have been put into use. The plaintiffs contend that these incinerators constitute subsequent expansions of the farming operations which reactivate the one year period of limitations applicable to the nuisance action. As such, they argue that because they already had a suit on file at the time that the incinerators were installed, that the motions for summary judgment should be overruled. In the alternative, they point out that their nuisance cause of action constitutes a violation of the Mississippi Air and Water Pollution Control Law which was raised in Paragraph 21 of their complaint [1]. They note that § 95–3–29(3) excepts the provisions of this law from the one year period of limitations.

### III.

### *The Non-incinerator Farms*

Attached to the plaintiffs' response to the motions for summary judgment is the affidavit of John W. Harper, an environmental consultant. Mr. Harper reviewed the official Mississippi Department of Environmental Quality permit files to determine if any of the defendants' facilities had been expanded during the one year period preceding the January 4, 2000, complaint filing date. The affidavit indicates that seven of the ten facilities were expanded by the addition of incinerators for the disposal of animal carcasses. According to Harper, three of the facilities have not had incinerators added. Two of these facilities are Isolation Farm # 1 and Isolation Farm # 5, operated directly by Prestage Farms.

---

1. Paragraph 21 of the complaint provides, in full, as follows: "Pursuant to the Mississippi Air and Water Pollution Control Law, Miss. Code Ann. § 49–17–1, et seq., the pollution of the air and waters of the state constitutes a menace to public health and welfare and constitutes a public nuisance."

The third "non-incinerator" facility is identified as the Gore and Hill Partnership. This partnership was dissolved and reformed in 1995 as Gone Hog Wild, Inc., and Pig Palace, Inc.

There is a factual dispute as to whether the farm operated by Pigs to Hogs, Inc., is equipped with an incinerator. The Harper affidavit indicates that an air construction permit was issued for this farm on July 9, 2002. To the contrary, in an affidavit, attached to its reply memorandum, Martha Cole, the founder and stockholder of Pigs to Hogs, Inc., asserts unequivocally that no incinerator was ever installed. The court recognizes that the issuance of a permit does not automatically translate into the installation of an incinerator. This dispute will have to be resolved through either an evidentiary hearing or by stipulation. As such, insofar as this opinion is concerned, Pigs to Hogs, Inc., must be treated as if it has an incinerator in use.

In their memorandum, the plaintiffs concede that all of the defendants' facilities were initially constructed and permitted by the Mississippi Department of Environmental Quality more than one year prior to the filing of the complaint in the Montgomery County Chancery Court. They also concede that the defendants' facilities fall within the definition of an "agricultural operation." These concessions, in conjunction with the Harper affidavit that no subsequent expansions occurred at Isolation Farm # 1, Isolation Farm # 5, or the Gore and Hill Partnership facilities (now known as Gone Hog Wild, Inc., and Pig Palace, Inc.), mandate a conclusion that these farming operations, i.e., Isolation Farm # 1, Isolation Farm # 5, Gone Hog Wild, Inc., and Pig Palace, Inc., enjoy the defense of the one year period of limitations

established by § 95–3–29(1), except for the alleged cause of action that could possibly exist under the Mississippi Air and Water Pollution Law. This will be discussed more thoroughly hereinbelow.

## IV.

### The Incinerator Farms

 The Harper affidavit indicates that the remaining debtor/defendant farms, as well as, the Prestage Farms' facilities known as PM–7, PM–8, PM–9, and PM–10, established incinerators on their respective premises between August, 2000, and July, 2002. The plaintiffs contend that the installation of these incinerators constitutes a substantial change to these farms subsequent to their original "established date of operation." As such, they assert that the one year filing period now begins with the date that the incinerators became operational on each farm[2]. The court disagrees with the plaintiffs' broad reading of the statute. Section 95–3–29(2)(b) provides that if a facility is subsequently expanded, the established date of operation *for each expansion* is deemed to be separate and independent from the "established date of operation" for the farm in general. The statute specifically provides that "the commencement of expanded operation shall not divest the agricultural operation of a previously established date of operation." The court finds, based on the plain meaning of the statute, that a subsequent expansion, if it has substantially changed the farming operations, begins a one year period for the filing of a nuisance action caused by that particular expansion, but does not necessarily reopen the one year period for those agricultural activities that have otherwise remained un-

---

**2.** The court notes that the installation of all of the incinerators occurred *after* the filing of the complaint in the Montgomery County Chan-

cery Court. However, the court does not believe that it is necessary to address this issue in this opinion.

changed. Accordingly, if the addition of the incinerators constitutes a substantial change in the operations of the facilities in question, a one year period for filing nuisance actions, relating to the incinerators and their effect on the agricultural operations, begins to run from the incinerators respective dates of operation. Nevertheless, a genuine issue of material fact remains in dispute as to whether the addition of the incinerators constitutes a "substantial change" in the defendants' farming operations. As such, the motions for summary judgment filed by Prestage Farms and the debtor/defendants affected by the installation of the incinerators cannot be decided at this time. The question of whether the installation of the incinerators substantially changed the farming operations must first be determined.

## V.

### The Mississippi Air and Water Pollution Control Law

■ The plaintiffs allege that the actions of the defendants constitute a *public* nuisance in violation of the provisions of the Mississippi Air and Water Pollution Control Law, codified in Miss.Code Ann. § 49–17–1, et seq. The court has specifically examined § 49–17–29, which provides that it is unlawful for any person to cause pollution of the air or pollution of any waters in this state, and § 49–17–31, which provides that whenever "the commission or an employee thereof" has reason to believe that a violation has occurred, "the commission," presumably, the Mississippi Department of Environmental Quality, (See § 49–17–7(1).) may cause a written complaint to be served upon the alleged violator or violators. Finally, the court reviewed § 49–17–43, which provides that any person found "by the commission" to be violating any of the provisions of the Mississippi Air and Water Pollution Control Law

shall be subject to a civil penalty for each violation. Structurally, the Mississippi Air and Water Pollution Control Law appears to be a regulatory scheme which allows the State of Mississippi to oversee and abate air. and water pollution. The court found no statutory language or case authority suggesting that a private right of action is created under this law which would allow an individual plaintiff to bring a civil lawsuit to redress its violation. At this time, the court cannot even begin to determine whether the farming operations being conducted by Prestage Farms and the debtor/defendants actually violate the air and water pollution law. However, if the plaintiffs have a cognizable claim under this law, and if the plaintiffs are also afforded a private right of action, it seems that it would clearly be excepted from the one year period of limitations set forth in § 95–3–29(1). As such, the defendants would not be entitled to judgment as a matter of law. Accordingly, the court will grant the parties twenty days from the date of the entry of this opinion within which to submit briefs on the issue of whether a private right of action can be maintained under the Mississippi Air and Water Pollution Control Law.

## VI.

### Standards for Summary Judgment

Summary judgment is properly granted when pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Bankruptcy Rule 7056; Uniform Local Bankruptcy Rule 18. The court must examine each issue in a light most favorable to the nonmoving party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Phillips v. OKC*

854

Corp., 812 F.2d 265 (5th Cir.1987); *Putman v. Insurance Co. of North America*, 673 F.Supp. 171 (N.D.Miss.1987). The moving party must demonstrate to the court the basis on which it believes that summary judgment is justified. The non-moving party must then show that a genuine issue of material fact arises as to that issue. *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291 (5th Cir.1987), *Putman v. Insurance Co. of North America*, 673 F.Supp. 171 (N.D.Miss.1987). An issue is genuine if "there is sufficient evidence favoring the nonmoving party for a fact finder to find for that party." *Phillips*, 812 F.2d at 273. A fact is material if it would "affect the outcome of the lawsuit under the governing substantive law." *Phillips*, 812 F.2d at 272.

## VII.

### Conclusion

Based on the foregoing, the court would summarize its findings as follows:

1. The parties shall submit briefs within twenty days hereof on the issue of whether an individual plaintiff can maintain a private right of action to seek redress for violations of the Mississippi Air and Water Pollution Control Law.

2. If the court concludes that a private right of action does exist, the one year period of limitations set forth in § 95–3–29(1) will not bar the plaintiffs' cause of action, if it is indeed viable, under the Mississippi Air and Water Pollution Control Law. The motions for summary judgment will thereafter be overruled to this extent.

3. If the court concludes that a private right of action does *not* exist, § 95–3–29(1) bars the plaintiffs' cause of action against Gone Hog Wild, Inc., Pig Palace, Inc., as well as, Prestage Farms' Isolation Farm # 1, and Isolation Farm # 5. This could also be applicable to Pigs to Hogs, Inc., if it never installed an operable incinerator.

4. In addition, should a private right of action *not* exist, § 95–3–29(1) would likewise bar the plaintiffs' cause of action against Prestage Farms and the remaining debtor/defendants for events occurring prior to the installation of the incinerators on the respective farms, as well as, to any operations not substantially changed by the installation of the incinerators. Any nuisance activities or events attributable to or caused by the incinerators would remain actionable if the installation of the incinerators substantially changed the previously existing operations.

5. Final decisions on the motions for summary judgment will be held in abeyance until the "private right of action" question is resolved.

A separate order will be entered consistent with this opinion.